THIS OPINION IS CITABLE
AS PRECEDENT OF THE
TTAB

Mailed:
Aug. 7, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Davey Products Pty Ltd.
_____

Serial No. 77029776
_____

Gregory C. Golla of Merchant & Gould P.C. for Davey
Products Pty Ltd.

Alicia P. Collins, Trademark Examining Attorney, Law Office
115 (Tomas V. Vlcek, Managing Attorney).
_____

Before Bucher, Grendel and Zervas, Administrative Trademark
Judges.

Opinion by Grendel, Administrative Trademark Judge:

**Introduction.**

Davey Products Pty Ltd. (applicant) seeks registration
on the Principal Register of the mark DAVEY (in standard
character form) for goods identified in the application as
"electric motors for machines; waterpumps with fluid flow

or pressure control for domestic, industrial and commercial use; and parts and fittings therefor."[1]

The Trademark Examining Attorney has issued a final refusal to register applicant's mark on the ground that the mark, as applied to the goods identified in the application, so resembles two previously-registered marks as to be likely to cause confusion, to cause mistake, or to deceive.  Trademark Act Section 2(d), 15 U.S.C. §1052(d).

The first cited registration is Principal Register Registration No. 2275634 (the '634 registration), which is of the mark DAVEY (in standard character form) for goods identified in the registration as "air compressors and parts therefor."[2]

---

[1] Serial No. 77029776, filed on October 26, 2006.  The application is based on use in commerce under Trademark Act Section 1(a), 15 U.S.C. §1051(a).  March 1, 1998 is alleged in the application as the date of first use of the mark anywhere and the date of first use of the mark in commerce.  To overcome an initial surname refusal under Trademark Act Section 2(e)(4), applicant amended the application to seek registration pursuant to the acquired distinctiveness provisions of Trademark Act Section 2(f), 15 U.S.C. §1052(f).  The Trademark Examining Attorney then accepted the Section 2(f) claim and withdrew the surname refusal.

[2] Issued September 7, 1999.  Section 8 affidavit accepted; Section 15 affidavit acknowledged; renewed.  As will be discussed more fully below in connection with the thirteenth *du Pont* likelihood of confusion factor, the current owner of this registration is Jenny Products, Inc., via a November 2008 assignment from the previous owner, Peter Leiss.  (Both applicant and the Trademark Examining Attorney made of record an abstract of title to this registration obtained from the Office's assignment database.)

The second cited registration is Principal Register Registration No. 1491960 (the '960 registration), which is of the mark DAVEY QUIETFLO (in standard character form) for goods identified in the registration as "air compressors."[3]

Applicant has appealed the final refusal. The appeal is fully briefed.

After careful consideration of all of the evidence of record and the arguments of counsel, we affirm the refusal to register.

**Applicant's Motion to Strike.**

We first shall address a preliminary evidentiary issue, i.e., applicant's motion to strike the evidence attached to the Trademark Examining Attorney's denial of applicant's request for reconsideration.

By way of background, we note that on November 1, 2008, applicant filed its notice of appeal and a request for reconsideration of the final refusal. In and with the

---

[3] Issued June 14, 1988. Section 8 affidavit accepted; Section 15 affidavit acknowledged; renewed. As will be discussed more fully below in connection with the thirteenth *du Pont* likelihood of confusion factor, the current owner of this registration is Jenny Products, Inc., via an April 1999 assignment from the registration's previous owner, Peter Leiss. (Both applicant and the Trademark Examining Attorney made of record an abstract of title to this registration obtained from the Office's assignment database.)

request for reconsideration, applicant submitted arguments and evidence in further support of its contention that there is no likelihood of confusion between applicant's mark and the cited registered marks. The request for reconsideration's evidence and arguments in large part pertained to the ownership and assignment histories of the two cited registrations, and the history of applicant's own prior registration. (See discussion below in connection with the thirteenth *du Pont* likelihood of confusion factor.) However, applicant's arguments in the request for reconsideration specifically included arguments that applicant's and registrant's goods are dissimilar and that they are marketed to different classes of purchasers.

On November 1, 2008, the Board instituted and suspended the appeal, and remanded the application to the Trademark Examining Attorney for consideration of the request for reconsideration.

On December 23, 2008, the Trademark Examining Attorney denied the request for reconsideration, and attached evidence to that denial consisting of various third-party Internet websites which, according to the Trademark Examining Attorney, further supported her contention that applicant's goods and the goods identified in the cited

registrations, and the trade channels for those goods, are similar and related.

The Board then resumed the appeal on January 5, 2009.

In its March 6, 2009 appeal brief, applicant moved to strike the Internet evidence attached to the denial of the request for reconsideration, on two grounds. Citing *In re Total Quality Group Inc.,* 51 USPQ2d 1474 (TTAB 1999), and TMEP[4] §710.01(c), applicant argues that Internet evidence must be made of record prior to appeal and may not be attached to a denial of reconsideration, because the applicant has no opportunity to check the reliability of the evidence and offer rebuttal evidence. Applicant also argues that the Trademark Examining Attorney's Internet evidence should not be considered because it "was not related to the evidence submitted by Applicant in its request for reconsideration," but instead "was related to earlier refusals to register as opposed to the new issues raised in the request for reconsideration." (Reply brief at 3.)

We deny applicant's motion to strike. Trademark Rule 2.142(d), 37 C.F.R. §2.142(d), provides that the

---

[4] Trademark Manual of Examining Procedure (5th ed. September 2007).

Ser. No. 77029776

evidentiary record on appeal should be complete prior to

appeal.  However, TBMP[5] §1207.04 provides:

> A timely request for reconsideration of an
> appealed action may be accompanied by additional
> evidence, which will thereby be made part of the
> evidentiary record in the application.  There is
> no need, in such a situation, for a 37 CFR
> §2.142(d) request to suspend and remand for
> additional evidence.  Evidence submitted with a
> timely request for reconsideration of an appealed
> action, that is, a request filed during the six-
> month response period following issuance of the
> appealed action, is considered by the Board to
> have been filed prior to appeal, even if the
> notice of appeal was, in fact, filed earlier in
> the six-month response period than the request
> for reconsideration.
>
> When a timely request for reconsideration of an
> appealed action is filed (with or without new
> evidence), the examining attorney may submit,
> with his or her response to the request, new
> evidence directed to the issue(s) for which
> reconsideration is sought.  However, the
> applicant may not submit additional evidence in
> response to any evidence submitted by the
> examining attorney unless the examining
> attorney's action is a nonfinal action to which a
> response may be filed.  Otherwise, if the
> applicant wishes to submit additional evidence,
> it must file a request for remand.

Thus, evidence attached to a request for

reconsideration submitted with a notice of appeal, and

evidence attached to a denial of the request for

reconsideration, is considered to have been filed prior to

---

[5] Trademark Trial and Appeal Board Manual of Procedure (2d ed.,
1st rev. March 2004).

6

appeal, and is part of the application record on appeal. *See* TBMP §1207.04, and TBMP §1204.

This includes Internet evidence attached to the Trademark Examining Attorney's denial of the request for reconsideration. *See In re Fiesta Palms LLC,* 85 USPQ2d 1360 (2007)(Board considered Internet evidence submitted with the Trademark Examining Attorney's denial of request for reconsideration). The *Total Quality Management Group* case applicant relies on is inapposite because in that case the Trademark Examining Attorney's Internet evidence (a definition from an online dictionary) was submitted for the first time with the Trademark Examining Attorney's brief on appeal, not with the earlier-issued denial of the request for reconsideration, as in the present case. Also, the specific issue in the *Total Quality Management Group* case was whether the Board would take judicial notice of online dictionary evidence filed for the first time with the Trademark Examining Attorney's brief on appeal. The propriety of taking judicial notice is not an issue in the present case.

We also reject applicant's argument that the evidence attached to the Trademark Examining Attorney's denial of the request for reconsideration should be disregarded because it does not specifically pertain to the arguments

and evidence proffered by applicant in its request for reconsideration. The basic issue raised by applicant in the request for reconsideration was whether confusion is likely, and the Trademark Examining Attorney's evidence attached to the denial of the request for reconsideration addressed that issue. Moreover, as noted above, the request for reconsideration specifically included applicant's arguments that the goods are dissimilar and are marketed to different classes of purchasers. The Internet evidence attached to the Trademark Examining Attorney's denial of the request for reconsideration directly addressed those arguments.

In short, if applicant wanted to challenge the Trademark Examining Attorney's Internet evidence or submit evidence in rebuttal, applicant's remedy was to file a proper request under Trademark Rule 2.142(d) to suspend the appeal and remand the application, with the requisite showing of good cause for the remand and the additional evidence sought to be introduced. *See* TBMP §1207.02.

For these reasons, we deny applicant's motion to strike the evidence submitted by the Trademark Examining Attorney with her denial of applicant's request for reconsideration.

**Likelihood of Confusion.**

We turn now to the merits of the Section 2(d) refusal. To review, applicant seeks registration of the mark DAVEY (in standard character form) for goods identified in the application as "electric motors for machines; water pumps with fluid flow or pressure control for domestic, industrial and commercial use; and parts and fittings therefor." The Trademark Examining Attorney has cited two different registrations as bases for her Section 2(d) refusal. We note, however, that the refusal may be affirmed if likelihood of confusion is found as to either of the cited registrations; we need not find likelihood of confusion as to both cited registrations. In this case, our Section 2(d) findings and analysis need be and shall be based on only one of the cited registrations, i.e., Registration No. 2275634 (the '634 registration), which is of the mark DAVEY (in standard character form) for goods identified in the registration as "air compressors and parts therefor."[6]

---

[6] However, the other cited registration (the '960 registration), of the mark DAVEY QUIETFLO for "air compressors," is pertinent to our analysis and findings under the thirteenth *du Pont* factor, and we will consider the '960 registration in connection with our discussion of that factor. See *infra*.

Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue (the *du Pont* factors). *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

Under the first *du Pont* factor (similarity or dissimilarity of the marks), we find that applicant's DAVEY mark and the cited registered DAVEY mark are identical in terms of appearance, sound, connotation and commercial impression. We find that the first *du Pont* factor weighs heavily in favor of a finding of likelihood of confusion.

The second *du Pont* factor requires us to determine the similarity or dissimilarity of the goods as identified in the application and in the cited registration, respectively. Likelihood of confusion may be found based on any item that comes within the identification of goods in the involved application and registration. *See Tuxedo Monopoly, Inc. v. General Mills Fun Group*, 209 USPQ 986

10

(CCPA 1981); *In re La Peregrina Ltd.,* 86 USPQ2d 1645 (TTAB 2008). It is settled that it is not necessary that the respective goods be identical or even competitive in order to find that they are related for purposes of our likelihood of confusion analysis. That is, the issue is not whether consumers would confuse the goods themselves, but rather whether they would be confused as to the source of the goods. *See In re Rexel Inc*., 223 USPQ 830 (TTAB 1984). The goods need only be sufficiently related that consumers would be likely to assume, upon encountering the goods under similar marks, that the goods originate from, are sponsored or authorized by, or are otherwise connected to the same source. *See In re Martin's Famous Pastry Shoppe, Inc*., 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Melville Corp*., 18 USPQ2d 1386 (TTAB 1991); and *In re International Telephone & Telegraph Corp*., 197 USPQ 910 (TTAB 1978). Moreover, in cases such as this where the applicant's mark is identical to the cited registered mark, the degree of relatedness between the respective goods that is necessary to support a finding that the goods are related under the second *du Pont* likelihood of confusion factor is less than it would be if the marks were not identical; there need be only a viable relationship between the respective goods. *See In re Shell*

11

*Oil Co.,* 992 F.2d 1204, 26 USPQ2d 1687 (Fed. Cir. 1993); *In re Opus One Inc.,* 60 USPQ2d 1812 (TTAB 2001); and *In re Concordia International Forwarding Corp.*, 222 USPQ 355 (TTAB 1983).

Applying these principles in the present case, we find as follows.

Applicant's goods, as identified in the application, are "electric motors for machines; waterpumps with fluid flow or pressure control for domestic, industrial and commercial use; and parts and fittings therefor." The goods identified in the cited registration are "air compressors and parts therefor."

We find that applicant's goods identified as "electric motors for machines" are related to registrant's goods identified as "air compressors and parts therefor," because the record shows that an electric motor is or can be an essential component and/or replacement part of an air compressor. The Trademark Examining Attorney has submitted a printout of a page from the website of Electric Motor Warehouse,[7] upon which are advertised "Century® Magnetek Electric Motors," which are described as "Replacement Air Compressor Motors." Also, the price list for registrant's

---

[7] www.electricmotorwarehouse.com.

air compressors, submitted by applicant with its request for reconsideration, states that a standard feature of respondent's air compressors is a "230/460Volt, 3Phase, 60Hertz, 1800 RPM Motor." This evidence shows that registrant's "air compressors and parts therefor" are related to, and actually encompass, applicant's "electric motors for machines."

Further supporting a finding that applicant's goods and registrant's goods are related for purposes of the second *du Pont* factor is the Trademark Examining Attorney's third-party Internet evidence (attached to her denial of the request for reconsideration). Two of the third-party webpages submitted by the Trademark Examining Attorney show that water pumps and/or electric motors, such as applicant's, and air compressors, such as registrant's, can be manufactured and sold by a single source. The website of Cascade Machinery and Electric, Inc.[8] states that the company has offered "sales and service of pumps, motors, and compressors since 1918," and lists among its products "pumps," "compressors," and "electric motors." The website of Havenerent Enterprises Inc.[9] offers for sale products

---

[8] www.cascade-machinery.com.

[9] www.havenerent.com.

identified as "Bradley Power Plus Pressure Washers, Water Pumps and Air Compressors," all of which presumably originate from a single source, i.e., "Bradley."

Also supporting a finding that the goods are related is the Trademark Examining Attorney's evidence, submitted with her initial and final Office actions, consisting of printouts of twenty-one third-party use-based registrations, each of which includes in its identification of goods both the goods identified in applicant's application, i.e., water pumps and/or electric motors for machines, and the goods identified in the cited registration, i.e., air compressors. Although such registrations are not evidence that the marks shown therein are in use or that the public is familiar with them, they nonetheless have probative value to the extent that they serve to suggest that the goods listed therein are of a kind which may emanate from a single source under a single mark. *See In re Albert Trostel & Sons Co.,* 29 USPQ2d 1783 (TTAB 1993); and *In re Mucky Duck Mustard Co. Inc.*, 6 USPQ2d 1467 (TTAB 1988). Applicant contends that some of these third-party registrations also include varying numbers of other goods in addition to applicant's and registrant's goods, and that such registrations therefore are entitled to little probative value on the issue of

whether applicant's goods and registrant's goods are related. However, we find that in none of the third-party registrations are the identified goods so varied, numerous and obviously unrelated that the probative value of the registration under *Trostel* and *Mucky Duck* is negated.

Based on all of this evidence, and on the legal principles set forth above, we find that the goods identified in applicant's application are related to the goods identified in the cited registration, for purposes of the second *du Pont* factor. As noted above, in cases such as this where the applicant's mark is identical to the cited registered mark, the degree of relatedness between the respective goods that is necessary to support a finding that the goods are related under the second *du Pont* likelihood of confusion factor is less than it would be if the marks were not identical; there need be only a viable relationship between the respective goods. We find that the requisite relationship between the goods exists in this case. For these reasons, we find that the second *du Pont* factor weighs in favor of a finding that confusion is likely.

Under the third *du Pont* factor, we consider evidence pertaining to the similarity or dissimilarity of the trade

channels in which the goods identified in the application and in the cited registration, respectively, are marketed.

Because neither applicant's identification of goods nor registrant's identification of goods includes any restrictions or limitations as to trade channels, we presume that the respective goods are or would be marketed in all normal trade channels for such goods. *See In re Smith & Mehaffey*, 31 USPQ2d 1531 (TTAB 1994); *In re Elbaum*, 211 USPQ 639 (TTAB 1981). The Internet evidence submitted by the Trademark Examining Attorney (with her denial of the request for reconsideration) shows that the normal trade channels for applicant's and registrant's respective goods are the same and overlapping.

For example, at www.contractorsdirect.com, pictures of an air compressor and a water pump appear next to each other on the same page. Likewise at www.csnstores.com, pictures of an air compressor and a water pump appear on the same page. Air compressors, water pumps, and/or electric motors all are offered for sale on the websites www.cascade-machinery.com, www.northerntool.com, www.dawest.com, www.havenerent.com, www.lubbockelectric.com, and www.greenvalleycompressor.com.

Based on this evidence, we find that the goods identified in applicant's application and in registrant's

registration would be encountered by the same purchasers on the same manufacturer and/or supplier websites.  This overlap in trade channels supports a finding, under the third *du Pont* factor, that a likelihood of confusion exists.

Under the fourth *du Pont* factor, we consider the conditions of purchase.  Applicant has made of record a price list from the website of Davey Compressor Co. (a division of registrant) which shows that registrant's air compressors can cost thousands of dollars.  However, "... it is the identification of goods that controls, not what extrinsic evidence may show about the specific nature of the goods.  ...  An applicant may not restrict the scope of the goods covered in the cited registration by argument or extrinsic evidence."  *In re Peregrina Ltd.,* 86 USPQ2d at 1646.  Thus, our determination under the fourth *du Pont* factor must be based on registrant's identified "air compressors and parts therefor" generally, not on the legally irrelevant fact that registrant's actual air compressors might be quite expensive.  *See In re Opus One Inc.*, 60 USPQ2d at 1817.

On this record, there is no basis upon which we might find that air compressors, water pumps and electric motors necessarily are so expensive, or that the purchasers of

17

these goods necessarily are so knowledgeable and careful in purchasing the goods, that the likelihood of confusion arising from the use of identical marks on such goods would be significantly mitigated.  Moreover, even if we were to find that the goods are somewhat expensive and that some care would be taken in purchasing the goods, it is well-settled that even careful purchasers who are knowledgeable as to the goods are not necessarily knowledgeable in the field of trademarks or immune to source confusion arising from the use of confusingly similar (and in this case, identical) marks on or in connection with the goods.  *See Giersch v. Scripps Networks Inc.,* 90 USPQ2d 1020 (TTAB 2009); *In re Wilson*, 57 USPQ2d 1863 (TTAB 2001); *In re Decombe*, 9 USPQ2d 1812 (TTAB 1988).

For these reasons, we find that the fourth *du Pont* factor is at best neutral in this case; it certainly does not weigh significantly in applicant's favor.

Under the fifth *du Pont* factor (fame of the prior mark), applicant is correct in noting that there is no evidence that the cited registered mark is famous. However, it is settled that the absence of such evidence is not particularly significant in the context of an ex parte proceeding.  *See In re Thomas*, 79 USPQ2d 1021, 1027 n.11 (TTAB 2006).  Moreover, "[i]t is not necessary that a

registered mark be famous to be entitled to protection against a confusingly similar mark." *In re Big Pig Inc.*, 81 USPQ2d 1436, 1439 (TTAB 2006). We find that the fifth *du Pont* factor is neutral in this case.

Under the sixth *du Pont* factor, we find that there is no evidence of third-party use of similar marks on similar goods. On this record, applicant and registrant are the only owners of DAVEY marks. Applicant has submitted printouts of two third-party registrations (owned by the same registrant) of the marks ATTABOY DAVE and DAVE LENNOX SIGNATURE for air conditioners, furnaces and heat pumps.[10] However, even assuming (in applicant's favor) that these registered marks are similar to the DAVEY marks at issue in this case and that the goods identified in the third-party registrations are similar to the goods identified in applicant's application and in the cited registration, it is settled that third-party registrations are not evidence of third-party use of the registered marks in the marketplace, for purposes of the sixth *du Pont* factor. *See Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992). The two third-party registrations applicant relies on certainly do not suffice

---

[10] Registration Nos. 3059255 and 1505741.

to establish that the use of marks similar to DAVEY in connection with the relevant goods is so widespread in the marketplace that purchasers have become accustomed to and are able to distinguish such marks on the basis of small differences. *See Palm Bay Imports, Inc*., 73 USPQ2d at 1694. We find that the sixth *du Pont* factor is neutral in this case; it certainly does not weigh in applicant's favor.

We consider next the seventh *du Pont* factor (nature and extent of any actual confusion) and the related eighth *du Pont* factor (extent of the opportunity for actual confusion). Applicant contends that it is unaware of any actual confusion during ten years of applicant's and registrant's contemporaneous use. However, "[t]he fact that an applicant in an ex parte case is unaware of any instances of actual confusion is generally entitled to little probative weight in the likelihood of confusion analysis, inasmuch as the Board in such cases generally has no way to know whether the registrant likewise is unaware of any instances of actual confusion..." *In re Opus One Inc.,* 60 USPQ2d at 1817. Moreover, "[i]t should also be noted that competent evidence of actual confusion is difficult to come by where as here both applicant and registrant may be performing their respective activities in

a commendable or exemplary fashion." *In re Opus One*, 60

USPQ2d at 1818, *quoting from In re Richard Bertram & Co.*,

203 USPQ 286, 291 (TTAB 1979). Finally, we acknowledge, as

discussed more fully below in connection with the

thirteenth *du Pont* factor, that applicant owned a prior

registration of the same mark for the same goods, which co-

existed on the Register with the cited registration for six

years. However, the mere co-existence of the marks on the

Register does not establish that there has been no actual

confusion in the marketplace. *See In re Thomas*, 79 USPQ2d

at 1028.

In any event, even though we find under the seventh *du Pont* factor that there apparently has been no actual confusion, there is no basis on this record for finding, under the related eighth *du Pont* factor, that there has been a significant opportunity for actual confusion to have occurred. That is, there is no evidence that the nature and extent of applicant's and registrant's actual use of their marks in the marketplace, including the extent of geographical overlap, has been so substantial as to render the apparent absence of actual confusion legally significant. *See In re Thomas,* 79 USPQ2d at 1028; *In re Continental Graphics Corp.,* 52 USPQ2d 1377 (TTAB 1999); *Gillette Canada, Inc. v. Ranir*, 23 USPQ2d 1768 (TTAB 1992).

We therefore find that the eighth *du Pont* factor does not weigh in applicant's favor in this case.

In short, the fact (under the seventh *du Pont* factor) that there apparently has been no actual confusion must be considered together with the fact (under the eighth *du Pont* factor) that there apparently has been no significant opportunity for actual confusion to have occurred. In these circumstances, we find that the seventh and eighth *du Pont* factors pertaining to the issue of actual confusion are essentially neutral in this case.

The next pertinent *du Pont* factor raised by applicant is the eleventh, under which we consider evidence of the extent to which applicant has a right to exclude others from use of its mark on its goods. Contrary to applicant's argument, applicant's ownership of a now-cancelled registration of the mark (see discussion below) does not establish applicant's right to exclude others from use of the mark. A cancelled registration is not entitled to any of the statutory presumptions of Section 7(b) of the Trademark Act, including the presumption of an exclusive right to use the mark. *See In re Ginc UK Ltd.*, 90 USPQ2d 1472 (TTAB 2007); *In re Hunter Publishing Co.*, 204 USPQ 957 (TTAB 1979). Nor does applicant's mere assertion of common-law use of its mark for ten years in itself suffice

22

to establish that applicant has any significant right to exclude others from use of the mark. The eleventh *du Pont* factor is neutral in this case.

Under the twelfth *du Pont* factor (the potential for confusion, i.e., whether de minimis or substantial), we find that the goods involved here are the type of goods that would be marketed to and purchased by significant numbers of purchasers, and that the potential for confusion therefore cannot be deemed to be de minimis. The twelfth *du Pont* factor is neutral, at best.

The miscellaneous thirteenth *du Pont* factor requires us to consider "any other established fact probative of the effect of use." We shall consider under this factor the evidence and arguments applicant has heavily relied upon pertaining to the assignment and prosecution histories of the two cited registrations and of its prior (now cancelled) registration. As noted above, we are basing our likelihood of confusion determination in this case on only one of the cited registrations, the '634 registration. However, the other cited registration, the '960 registration, is relevant to this aspect of applicant's arguments, and we therefore shall consider it here.

The record shows that applicant was the owner of a prior registration, Registration No. 2327761 (the '761

registration), for the same mark and the same goods as the mark and goods covered by applicant's current application. This prior registration was cancelled by operation of law under Section 8 on September 14, 2006.  When applicant's prior '761 registration was issued on March 14, 2000, both of the registrations cited against applicant in the current application existed on the Register.  The '960 registration (of the mark DAVEY QUIETFLO for "air compressors") was owned by Jenny Products, Inc., by virtue of an April 1999 assignment from Peter Leiss.  The '634 registration (of the mark DAVEY for "air compressors and parts therefor") was owned by Peter Leiss.  Neither the '960 nor the '634 registration was cited as a Section 2(d) bar to the issuance of applicant's prior '761 registration.  All three of the registrations, with the three different record owners, co-existed on the Register during the 2000-2006 life of applicant's prior registration.  Applicant argues that by filing its current application for registration of the same mark for the same goods as those covered by its prior registration, it merely seeks to return to the status quo that existed prior to the Section 8 cancellation of its prior registration.

However, applicant is not automatically entitled to a return to the status quo. As the Board stated in *In re Ginc UK Ltd.*, 90 USPQ2d at 1480:

> Nor does applicant's cancelled registration justify registration of its current application. A cancelled registration is not entitled to any of the statutory presumptions of Section 7(b) of the Trademark Act. See, e.g., In re Hunter Publishing Company, 204 USPQ 957, 963 (TTAB 1979) (cancellation "destroys the Section [7(b)] presumptions and makes the question of registrability 'a new ball game' which must be predicated on current thought.").

For whatever reason, the Trademark Examining Attorney who examined applicant's prior application did not refuse registration under Section 2(d) based on the previous '960 and '634 registrations that are cited against applicant in its current application. However, the Board is not bound by the decision of the prior Trademark Examining Attorney. We must decide this case based on the evidence which is before us now. As the Board stated in *In re Thomas*:

> Further, our determination of likelihood of confusion must be based on the facts and record before us. We are not bound by the previous examining attorney's determination that applicant's mark was registrable, and we will not compound the problem of the registration of a confusingly similar mark by permitting such a mark to register again.

79 USPQ2d at 1028. *See also In re Perez*, 21 USPQ2d 1075, 1077 (TTAB 1991) (Section 2(d) refusal affirmed even though the cited registration had not been cited against applicant's previous registration, now expired, of the same mark for the same goods; "[W]e are, of course, not bound by an Examining Attorney's prior determination as to registrability."). *See generally In re Omega SA*, 404 F.3d 1362, 83 USPQ2d 1541 (Fed. Cir. 2007); *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001).

In short, the fact that the two registrations cited against applicant in its current application were not cited as Section 2(d) bars to issuance of applicant's now-cancelled prior registration does not automatically justify re-registration of applicant's mark (i.e., applicant's requested return to the status quo which existed prior to the Section 8 cancellation of applicant's prior registration), if the evidence as a whole in the current application establishes that a likelihood of confusion exists. In a similar case, the Board noted:

> We can only speculate as to why the cited registration issued over applicant's predecessor's now-cancelled registration. In any event, even when one registration issues over the other and both exist side-by-side for some period of time (in this case about six years), that is one element "which is placed in the hopper with other matters which ordinarily are considered in

26

>resolving the question of likelihood of confusion, but which is not in the least determinative of said issue."  In re Trelleborgs Gummifabriks Aktiebolag, 189 USPQ 106, at 107 (TTAB 1975).  In this case, we find that the factors of the identical goods and highly similar marks far outweigh this point in our consideration of likelihood of confusion as a whole.

*In re Kent-Gambore Corp*., 59 USPQ2d 1373, 1377 (TTAB 2001).

Thus, under the miscellaneous thirteenth *du Pont* likelihood of confusion factor, we have taken into account the facts pertaining to applicant's prior registration.  We find that they weigh in applicant's favor to a degree, but they are not determinative.

We also shall consider, under the thirteenth *du Pont* factor, applicant's arguments with respect to the ownership histories of the two registrations cited as Section 2(d) bars to registration of applicant's mark in the current application.  Applicant contends correctly that although the two registrations currently (as of November 2008) are owned by the same record owner (Jenny Products, Inc.), for most of their co-existence on the Register (from 1999 to 2008) they were owned by different record owners.  Jenny Products, Inc. owned the earlier '960 registration (DAVEY QUIETFLO for "air compressors"), and Peter Leiss owned the later '634 registration (DAVEY for "air compressors and

27

parts therefor"). Applicant argues that the marks and goods of the two cited registrations are more similar to each other than either of them is to applicant's mark and goods, and that if the two cited registrations can have co-existed on the Register for most of their existence, then applicant's mark likewise can co-exist and should be re-registered.

However, it is settled that the fact that there already may be two confusingly similar marks co-existing on the Register and owned by different owners, which arguably should not have registered over each other, does not relieve the Board of its duty to determine the registrability of the applicant's mark on the record currently before it, nor does it justify the addition to the Register of what may be yet another confusingly similar mark. *See, e.g., In re Paper Doll Promotions Inc.*, 84 USPQ2d 1660, 1670 (TTAB 2007)("...our decision on the registrability of applicant's mark must be based on the record in this case and not on the fact that two arguably similar marks have been allowed for registration by the Office."); *Mattel Inc. v. Funline Merchandise Co.*, 81 USPQ2d 1372, 1375 (TTAB 2006)(regarding the co-existence on the register of two third-party registrations of arguably confusingly similar marks, "... it is settled that the

determination of registrability of those particular marks by the trademark examining attorneys cannot control our decision in the case now before us.").

Further with respect to the co-existence on the Register of the '960 and '634 registrations cited by the Trademark Examining Attorney in the present case, we note as an aside that when the application which led to the later '634 registration was approved for publication in March 1999, both that application and the prior '960 registration were owned by the same owner, Peter Leiss. Thus, the two cited registrations have had common ownership not only since November 2008, as noted by applicant, but they also had common ownership at the pivotal time that the application which led to the '634 registration was approved for publication.  This would explain why the prior '960 registration was not cited as a Section 2(d) bar to the later '634 registration.[11]

---

[11]     We further note that in April 1999, Peter Leiss, an individual, assigned the '960 registration to Jenny Products, Inc., a corporation.  Peter Leiss owned the '634 registration until November 2008, when he assigned it as well to Jenny Products, Inc.  Thus, as applicant notes, between April 1999 and November 2008, the '960 registration and the '634 registration were owned by different record owners.  However, although the two registrations had two different record owners between 1999 and 2008, i.e., Peter Leiss and Jenny Products, Inc., it appears from the Office's electronic records pertaining to the '634 registration that there is a common ownership or other close relationship between Peter Leiss, the individual, and Jenny Products, Inc., the corporation.  First, the combined §8

Thus, we have taken into account under the thirteenth

*du Pont* factor the histories of the two prior registrations

cited by the Trademark Examining Attorney in this case.  As

we have found with respect to the history of applicant's

own prior registration, we find that the facts surrounding

the histories of the two cited registrations weigh in

_____

affidavit and §9 renewal application for the '634 registration, filed on October 7, 2008, named Jenny Products, Inc. as the owner of the registration.  However, at that time, the record owner of the registration was Peter Leiss.  The Office issued a Post-Registration Office action rejecting the §8 affidavit on that ground.  In a timely response filed on November 21, 2008, Peter Leiss filed a substitute §8 affidavit naming himself as the owner of the registration.  His attorney's communication accompanying the substitute declaration stated that Peter Leiss and Jenny Products, Inc. "are associated with each other and the undersigned Attorney [of] record inadvertently made the Section 8 Affidavit such that it was filed by the wrong party."  The Office accepted the substitute §8 declaration on December 11, 2008. Further supporting an assumption that there is a close relationship between Peter Leiss and Jenny Products, Inc. is the fact that the address of record for Jenny Products, Inc., 850 North Pleasant Avenue, Somerset, Pennsylvania, is the same address identified by Peter Leiss as his address in his §8 affidavit and in the above-referenced November 2008 assignment from Peter Leiss to Jenny Products.  Finally, we note that the attorney of record for both Peter Leiss and Jenny Products, Inc. is the same, i.e., Floyd B. Carothers.

We hasten to add that we note these facts regarding the ownership histories of the two cited registrations only as background pertaining to applicant's argument that the two cited registrations had co-existed, with different owners, for most of their existence on the Register.  That is, we are not basing our decision in this case on any specific finding that there in fact was a common ownership or other relationship between Peter Leiss and Jenny Products, Inc. during the 1999-2008 period when the '960 and '634 registrations had different record owners.  No such finding is necessary because, as discussed in the main text of this opinion, even if the two registrations were owned by completely unrelated entities and arguably should not have been allowed to register over each other, that fact would not justify issuance of a registration to applicant for yet another confusingly similar mark.

applicant's favor to a degree under the thirteenth *du Pont* factor, but they are not determinative in our overall likelihood of confusion analysis.

In summary, we have considered all of the evidence of record as it pertains to the relevant *du Pont* likelihood of confusion factors. The fact that applicant owned a prior, now-cancelled registration which had co-existed on the Register with the two cited registrations, and the fact that the two cited registrations had coexisted with different record owners for much of their time on the Register, both tend to weigh in applicant's favor in our likelihood of confusion analysis. However, the evidence as a whole leads us to conclude that a likelihood of confusion exists. The marks are identical, and the goods, trade channels and purchasers are sufficiently related that source confusion is likely to result from the use of these identical marks. We cannot find on this record that the respective goods as identified necessarily are so expensive or purchased with such a degree of care that the likelihood of confusion arising from the identical nature of the marks and the relatedness of the goods would be mitigated. The cited registered mark is not famous, but it need not be famous in order to be entitled to protection. Moreover, there is no sufficient basis for finding that the cited

31

registered mark is weak or diluted in the marketplace due to third-party use of similar marks on similar goods. There may be no evidence of actual confusion, but neither is there any evidence that there has been a significant opportunity for actual confusion to have occurred in the marketplace. The record does not establish that applicant has any significant right to exclude others from using the mark, nor does it establish that the potential for confusion is de minimis.

Having considered all of the evidence of record as it pertains to the *du Pont* likelihood of confusion factors, and for the reasons discussed above, we conclude that a likelihood of confusion exists between applicant's mark DAVEY for "electric motors for machines; waterpumps with fluid flow or pressure control for domestic, industrial and commercial use; and parts and fittings therefor," and the cited '634 registered mark DAVEY for "air compressors and parts therefor."

We have considered all of applicant's arguments to the contrary, including any arguments not specifically discussed in this opinion, but we are not persuaded thereby. To the extent that any doubts might exist as to the correctness of this conclusion, we resolve such doubts, as we must, in favor of registrant. *See In re Shell Oil*

*Co.,* 992 F.2d 1204, 26 USPQ2d 1687 (Fed. Cir. 1993); *In re*

*Hyper Shoppes (Ohio) Inc.,* 837 F.2d 840, 6 USPQ2d 1025

(Fed. Cir. 1988).


**Decision**:  The Section 2(d) refusal based on the cited

Registration No. 2275634 is affirmed.