Newman, Circuit Judge,
concurring.
I agree that the TTAB improperly analyzed the factor of “fame” and that vacatur and remand are appropriate. I believe it to be appropriate, also, that Vineyards’ decades of prior usage should receive its proper weight in this consideration, beyond the acknowledgement of simple “priority.” However, my primary purpose in writing separately is to call attention to two additional issues that warrant review on remand.
1. The Board, in its analysis of “relatedness,” as the DuPont factor is called, did not fully consider all aspects of this factor, despite noting that relatedness can be based on use together (TTAB Op. 14), complementarity (TTAB Op. 12), or simultaneous consumption (TTAB Op. 13, 14). Indeed, the Board found that:
the evidence suggests that the goods are sold in the same channels of trade to the same purchasers....
TTAB Op. 15, suggesting a degree of relatedness that requires further exploration on remand.
2. Second, among the factors relevant to the likelihood of confusion analysis, the Board did not include the form of Fair-mont’s actual use of its registered mark.
These factors are part of the totality of the circumstances, all of which must be considered, each on a sliding scale appropriate to its weight and merit. I would include these aspects in the vacatur and remand, in order to ensure that the rede-termination of the cancellation petition properly encompasses all relevant factors.
I
Actual Use of the Registered Mark
Responding to Vineyards’ argument that in Fairmont’s use of ALEC BRADLEY STAR INSIGNIA the word INSIGNIA is in dominant format, the Board simply stated that “[b]ecause the depiction of the mark is in standard character format and Respondent is not limited to any particular presentation, the format in which Respondent currently uses its mark is not at issue.” TTAB Op. 9. The Board did not examine the actual use of the mark. However, as the Tenth Circuit has stated, “[a] standard character registration does not override the requirement that likelihood of confusion be measured by the perceptions of consumers in the marketplace, including the effect of packaging.” Hornady Mfg. Co. v. Doubletap, Inc., 746 F.3d 995, 1002 n. 2 (10th Cir. 2014). A comparison that “presentís] the mark ‘differently from the *1327 way that it actually appears on packaging,’ ” should be “rejected.” Id. At a minimum, the appearance and format is a factor to be given appropriate weight.
The specimens submitted in support of the challenged registration show the presentation of Fairmont’s mark in commerce, where ALEC BRADLEY is separated from STAR INSIGNIA, and the relative sizes of the words STAR and INSIGNIA are different, as seen in the registration specimens:
[[Image here]]
J.A. 195.
The Board described ALEC BRADLEY as a “house mark” and stated that “[g]en-erally, if the product marks are identical, the addition of the house mark does not avoid confusion, however, “where there are some recognizable differences in the asserted product marks ... the addition of a house mark and/or other material to the assertedly conflicting product mark has been determined to render the marks as a whole sufficiently distinguishable,’ ” TTAB Op. 10, quoting TTAB precedent. The Board found that because the marks at issue possess “recognizable differences,” the house mark “does distinguish the marks.” Id. However, this analysis did not take into account the actual usage, with separation of ALEC BRADLEY from STAR and INSIGNIA, in a different font and size.
The Board erred in declining to consider “illustrations of the mark as actually used,” for precedent recognizes that such illustrations “may assist the T.T.A.B. in visualizing other forms in which the mark might appear.” Citigroup Inc. v. Capital City Bank Grp., Inc., 637 F.3d 1344, 1353 (Fed. Cir. 2011). Contrary to the Board’s assessment, the dominance of the word INSIGNA as used on Fairmont’s products is indeed an issue.[1] Citigroup explains that consideration of actual use serves to ensure the TTAB visualizes the full breadth *1328 of a standard character mark. Id. (“[T]he T.T.A.B. used current and past commercial displays of the applied-for mark to inform but not to restrict its analysis of potential displays.”).
To the extent that the actual use of the ALEC BRADLEY STAR INSIGNIA mark presents a different impression to the consumer than the standard character mark viewed in the abstract, the Board should recall that the likelihood of confusion inquiry is “viewed through the eyes of a consumer” to determine the commercial impression of the mark. Duopross Medi-tech Corp. v. Inviro Med. Devices, 695 F.3d 1247, 1253-54 (Fed. Cir. 2012). Consideration of how the Fairmont registered mark is actually used, and viewed by the consumer, is part of the totality of the circumstances of likelihood of confusion and should be considered on remand.
II
The “Relatedness” of the Goods
Of course, cigars and wine are different. However, as noted in Hewlett-Packard Co. v. Packard Press, Inc., 281 F.3d 1261, 1267 (Fed. Cir. 2002), “[e]ven if the goods ... are not identical, the consuming public may perceive them as related enough to cause confusion about the source or origin.” See In re Shell Oil Co., 992 F.2d 1204, 1207 (Fed. Cir. 1993) (the Board is to “consider the degree of overlap of consumers exposed to the respective services, for ... even when goods or services are not competitive or intrinsically related, the use of identical marks can lead to the assumption that there is a common source”).
The Board treated relatedness as an all- or-nothing factor, although this factor should be analyzed along a sliding scale. As stated in DuPont, there is
no warrant, in the statute or elsewhere, for discarding any evidence bearing on the question of likelihood of confusion. Reasonable men may differ as to the weight to give specific evidentiary elements in a particular case. In one case it will indicate that confusion is unlikely; in the next it will not.... In every case turning on likelihood of confusion, it is the duty of the examiner, the board and this court to find, upon consideration of all the evidence, whether or not confusion appears likely. That determination ends the decisional process.
In re E. I. DuPont de Nemours & Co., 476 F.2d 1357, 1362 (C.C.P.A. 1973).
As noted supra, the TTAB found that “the evidence suggests that the goods are sold in the same channels of trade to the same purchasers.” TTAB Op. at 15. Precedent illustrates the factual sensitivity of the question of relatedness. In Shell Oil, 992 F.2d at 1207, the court recognized that “[t]he degree of ‘relatedness’ must be viewed in the context of all factors, in determining whether the services are sufficiently related that a reasonable consumer would be confused as to source or sponsorship.”
In In re Licores Veracruz, S.A. de C. V., Serial No. 77753913, 2012 WL 423807 (TTAB January 26, 2012), the TTAB reached a contrary conclusion on relatedness with respect to rum and cigars, stating:
in conjunction with the arbitrary nature of the mark MOCAMBO, we find that cigars and rum will be encountered by the same consumers under circumstances that could, because of the identity of the marks, give rise to the mistaken belief that they originate from the same source.... In view of the facts that the marks are identical and are a fanciful or arbitrary term, and the goods are related, move in the same channels of trade and are sold to the same consumers, we find that applicant’s mark MOCAMBO for “rum” is likely to cause *1329 confusion with the mark MOCAMBO for “cigars.”
Id. at 8, 10-11. In the present case, the TTAB relied on different reasoning: “Thus, the mere fact that two goods are used together in the same setting or venue does not, in and of itself, demand a finding that confusion is likely.” TTAB Op. 14 (quoting 4 J. McCarthy, on Trademarks and Unfair Competition § 24:26 (4th ed. 2015)). McCarthy cautions that these are fact-bound determinations and that no fact may “demand” a particular outcome. However, it devolves on the TTAB to provide reasonably consistent rulings on similar facts, to provide premises on which the public can rely.
Here, the Board concluded that wine and cigars are not “related” because they are products differing in both composition and method of manufacture. TTAB Op. 14. However, relatedness is a broad concept; products may exhibit “relatedness” when they “are complementary products sold in the same channels of trade to the same classes of consumers.” See In re Licores Veracruz, supra (finding that rum and cigars meet the criteria of relatedness). See also John Walker & Sons Ltd. v. Tampa Cigar Co., 124 F.Supp. 254, 256 (S.D.Fla. 1954), aff'd 222 F.2d 460 (5th Cir. 1955) (“Whisky and cigars are closely related in distribution and use.”); Geo. A. Dickel Co. v. Stephano Bros., 155 U.S.P.Q. 744 (TTAB 1967) (relying on John Walker in finding confusion for whiskey and cigarettes). But see Schenley Distillers, Inc. v. Gen. Cigar Co., 427 F.2d 788 (CCPA 1970) (the court rejected any principle that the same mark on tobacco and alcoholic beverage products necessarily results in likelihood of confusion; the court did not address the relatedness of all tobacco products and all alcoholic beverages under all circumstances).
Conclusion
It is appropriate for the Board to consider and to explain the weight given to all factors in evaluating the totality of circumstances, explaining any departure from' holdings in other proceedings. I concur in the judgment of vacatur and remand and would ensure the readjudication of all the relevant factors in the Board’s further consideration of the question of likelihood of confusion.

. The Fairmont registration states “no claim is made to the exclusive right to use ‘STAR INSIGNIA', apart from the mark as shown.” (J.A. 21). However, "a disclaimer is irrelevant in determining likelihood of confusion," and "disclaimed matter cannot be ignored.” 3 J. McCarthy, Trademarks and Unfair Competition § 19.72 (4th ed. 2014).