**In re BED & BREAKFAST REGISTRY.**

**Appeal No. 85–2418.**

United States Court of Appeals, Federal Circuit.

May 20, 1986.

Mark E. Singer, Winnetka, Ill., for appellant.

Nancy C. Slutter, Trademark Examining Atty., Office of the Sol., Arlington, Va., argued, for appellee. With her on brief, were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol.

Before SMITH, NEWMAN, and BISSELL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The U.S. Patent and Trademark Office (PTO) refused registration on the Principal Register of the service mark BED & BREAKFAST REGISTRY for "making lodging reservations for others in private homes".[1] The Trademark Trial and Appeal Board (the "Board") upheld the refusal on two grounds: first, that applicant's mark so resembles the service mark BED & BREAKFAST INTERNATIONAL for "room booking agency services"[2] as to be likely to cause confusion under 15 U.S.C. § 1052(d) (section 2(d) of the Lanham Act); and second, that applicant's mark as applied to its services is merely descriptive of those services in terms of 15 U.S.C. § 1052(e)(1) (section 2(e)(1) of the Lanham Act). We reverse the rejection under section 2(d) and affirm the rejection under section 2(e)(1).

### Likelihood of Confusion

Likelihood of confusion under section 2(d) of the Lanham Act is reviewed, on appeal from the Board, for correctness as a matter of law. *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 671, 223 USPQ 1281, 1282 (Fed.Cir.

---

1. Trademark application Serial No. 392,878, filed September 29, 1982.

2. Registration No. 1,150,088, issued March 31, 1981.

1984). The Board held that the marks BED & BREAKFAST REGISTRY and BED & BREAKFAST INTERNATIONAL, considered as a whole, are confusingly similar. The applicant argues that because the phrase "bed and breakfast" is descriptive, the distinctiveness of these two marks derives from the words "registry" and "international", words between which there is no confusing similarity. The applicant argues that the Board thus erred in giving significant weight to the common feature of the marks, and that the non-common portions are sufficiently different as to avoid confusion, relying on *Plak-Shack, Inc. v. Continental Studios of Georgia, Inc.*, 204 USPQ 242, 249 (TTAB 1979).

The descriptiveness of the phrase "bed and breakfast" is not contested. The record before the Board showed references to "bed and breakfast" reservation or referral services in travel guide books, directories, and newspaper articles; e.g., Associated Bed and Breakfast Services, Bed and Breakfast Chicago, Bed & Breakfast Hawaii, The Bed & Breakfast League Ltd., and Bed and Breakfast of Long Island. We agree with the applicant that travellers acquainted with the term "bed and breakfast" are more likely to rely on the non-common portion of each mark, e.g., "registry" vs. "international", to distinguish among similar services.

The Board is correct that the marks must be considered in their entireties. *In re National Data Corp.*, 753 F.2d 1056, 1060, 224 USPQ 749, 752 (Fed.Cir.1985). The common elements of the marks, even if descriptive, cannot be ignored. As analyzed in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973), likelihood of confusion is determined from the probative facts in evidence. *See also Specialty Brands*, 748 F.2d at 671, 223 USPQ at 1282. *DuPont* set out thirteen evidentiary factors which, when of record, should be considered by the Board and by this court. 476 F.2d at 1361, 177 USPQ at 567. This analysis starts with review of the similarity or dissimilarity of the marks in their entireties as to appearance, sound, and meaning. Overall, BED & BREAKFAST REGISTRY and BED & BREAKFAST INTERNATIONAL are not confusingly similar in either sound or appearance. The words "registry" and "international" do not have the same meaning, either alone or in combination with the term "bed and breakfast".

It was conceded that the marks are applied to similar services. The record shows that a large number of marks embodying the words "bed and breakfast" are used for similar reservation services, a factor that weighs in favor of the conclusion that BED & BREAKFAST REGISTRY and BED & BREAKFAST INTERNATIONAL are not rendered confusingly similar merely because they share the words "bed and breakfast".

■ The Commissioner argues that one "could reasonably assume that appellant's service was the domestic counterpart of registrant's international service". This theory, the nub of the Board's opinion, is not supported by evidence. The word "registry" has not been shown to have either international or national connotations, and the mark BED & BREAKFAST REGISTRY conveys no information of geographic scope. We are left with speculative assumption, an inadequate basis for the legal conclusion reached by the Board. In addition, the record showing the large number of variously named "bed and breakfast" services weighs against the reasonableness of the assumption that two such services are related.

Section 2(d) requires determination of whether the applicant's mark is "likely" to cause confusion. On this standard, we conclude that the Board erred in its refusal, on the basis of section 2(d), to register the mark.

### Descriptiveness

■ A mark is "merely descriptive", in terms of section 2(e)(1) of the Lanham Act, if it "would immediately convey to one seeing or hearing it the thought of appellant's services". *In re American Society of Clinical Pathologists, Inc.*, 442 F.2d

1404, 1407, 169 USPQ 800, 801 (CCPA 1971). Whether a mark is merely descriptive is a question of fact, determined from the viewpoint of the relevant purchasing public. Evidence of the purchasing public's understanding of the term may be obtained from any competent source, such as dictionaries, newspapers, or surveys. *See In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559, 227 USPQ 961, 963 (Fed.Cir.1985); *In re Abcor Development Corp.*, 588 F.2d 811, 814, 200 USPQ 215, 218 (CCPA 1978). The public's understanding of the term may also change with time.[3]

Although the phrase "bed and breakfast" is descriptive, applicant argues that the mark BED & BREAKFAST REGISTRY is not merely descriptive as applied to its services. This issue turns on the meaning of the word "registry" in the context of the mark in its entirety.

The parties have analyzed the dictionary definitions of "registry" in great detail, these definitions including: registration, enrollment, a ship's nationality, an official record, and an entry in a register. Applicant points out that it does not keep a register of lodgings for public use, and argues that "registry" requires an official record. Applicant asserts that it provides a reservation service, and that this service is independent of whether it chooses to maintain a private list of lodgings. The Board found that applicant's registry "is nonetheless clearly a part of its services and in fact it is so essential a part that without it the services could not be conducted".

In *American Society of Clinical Pathologists*, a majority of the Court of Customs and Patent Appeals held that the mark REGISTRY OF MEDICAL TECHNOLOGISTS was merely descriptive as applied to its services, which included examining and certifying medical technologists. That court viewed the maintenance of a roster or registry of medical technologists as part of the certification services, and concluded

that the mark was descriptive of the services to which it was applied. 442 F.2d at 1406–07, 169 USPQ at 801.

The Board was not persuaded by applicant's argument that *American Society of Clinical Pathologists* equates "registry" with an official record book. Before the Board were the results of the examining attorney's "Nexis" search which contained excerpts from two 1983 newspaper articles, one in the Washington Post and one syndicated by United Press International (UPI), which reported a bed and breakfast registry offered in Maryland by Sharp-Adams, Inc. 'The UPI article stated that the idea resulted from the founders' "reading a newspaper article about bed-and-breakfast registries in California and New England". The descriptive use of the word "registry" by others weighs against the applicant's argument that its own use is not descriptive of similar services.

■ The Board concluded that BED & BREAKFAST REGISTRY, in its common and dictionary meaning, would be understood to describe a register of bed and breakfast lodgings, and may convey the related thought of registering at a bed and breakfast lodging. On the record adduced, the Board did not err in finding applicant's mark merely descriptive of the services to which it is applied. We affirm the refusal of registration under section 2(e)(1).

### Evidentiary Matters

After the filing of appellant's brief, this court had granted the Commissioner's motion to remand for the purpose of enabling the Board to specify what evidence it had considered in deciding the appeal from the examiner's decision. In light of the Board's subsequent opinion, the Commissioner has objected to portions of appellant's brief and appendix as containing evidence that had not been considered by the Board. We do not, of course, consider new evidence that was not before the examiner

---

3. A mark that is merely descriptive of an applicant's services may be registered on the Principal Register if it becomes distinctive of those services. 15 U.S.C. § 1052(f). The applicant does not rely on the provisions of section 2(f).

or the Board. *See* 15 U.S.C. § 1071(a)(4); 37 C.F.R. § 2.142(d).

It appears, however, that the Commissioner's principal objection is to the applicant's introduction of portions of newspaper articles from a "Nexis" search. As discussed above, the examining attorney made of record excerpts of two 1983 articles on bed-and-breakfast accomodations, obtained through a "Nexis" search. These excerpts were cited in the final official action, an action that closed further prosecution of the application. The applicant then included in its brief before the Board more extensive excerpts of those same 1983 articles, showing additional and qualifying text, as well as excerpts from articles published in 1984 after the date of the examiner's "Nexis" search. The Board stated that it did not consider any of the applicant's "Nexis" materials, and thus it did not consider the additional text of the 1983 articles.

■ Let it be clear that by citing only a portion of an article, that portion is not thereby insulated from the context from whence it came. The Board erred in considering the examiner's fragment while refusing to permit the applicant to place that fragment in context. The Board neither remanded the case to allow the examining attorney to consider those augmented citations in the first instance, nor considered them in its decision. Fairness was ill served by this procedure. *See* Fed.R.Evid. 106.

We have not considered the 1984 Nexis articles that were not of record. We have reviewed the augmented portions of the 1983 articles, to determine whether they provide a basis for challenging the refusal to register under section 2(e)(1). Although it was error for the Board to fail to consider this evidence, on this record we conclude that such error was not harmful to the result. *See* 28 U.S.C. § 2111.

The denial of registration is affirmed.

AFFIRMED.