5/10/02

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**2900 Crystal Drive**
**Arlington, Virginia 22202-3513**

Lykos

Opposition No. 121,583

Callaway Vineyard &
Winery

v.

Endsley Capital Group,
Inc.

Before Seeherman, Hohein and Bottorff, Administrative
Trademark Judges.

By the Board:

Endsley Capital Group, Inc. ("applicant") seeks to
register the mark COASTAL WINERY for "varietal wines" in
International Class 33.[1] The application includes a
disclaimer of the word WINERY. Callaway Vineyard &
Winery ("opposer") has opposed registration on the
grounds that it is engaged in the production,
distribution, and sale of a variety of wines; that the
terms "coastal" and "coastal winery" are merely
descriptive and generic when used in connection with
applicant's goods; and that opposer is likely to be
damaged by the registration of applicant's proposed mark

inasmuch as it would impair opposer's ability to use the terms "coastal" and "coastal winery" to describe its own products.

Applicant, in its answer, admitted that opposer is engaged in the production, distribution, and sale of varietal wines. Otherwise, applicant denied the salient allegations of the notice of opposition, and asserted as affirmative defenses laches, estoppel, and acquiescence.

This case now comes up for consideration of opposer's motion for summary judgment (filed November 26, 2001) on the basis that applicant's mark is merely descriptive pursuant to Section 2(e)(1) of the Trademark Act. The motion is fully briefed.[2]

Opposer argues in its motion for summary judgment that no genuine issues of material fact exist regarding the descriptiveness of applicant's proposed mark inasmuch as the adjective "coastal" is widely used in the wine industry to refer to wine produced from grapes grown in the coastal region of the Pacific coast of the United States, mainly in California, or to describe a winery or

---

[1] Application Serial No. 75/857,311, filed November 24, 1999, alleging a bona fide intent to use the mark in commerce.
[2] Opposer submitted a reply brief which the Board has considered because it clarifies the issues herein. Consideration of a reply brief is discretionary on the part of the Board. *See* Trademark Rule 2.127(a).

vineyard that produces such wine; that some of the most influential wineries commanding premium prices are located in the coastal region of California; and that consumers would understand applicant's proposed mark COASTAL WINERY as referring to wine produced using grapes grown in the coastal region, or from a winery located in this region.  Furthermore, opposer asserts that applicant has admitted that its vineyard is located on a coast, that the wine it intends to produce will come from an area near a coast, and that it selected the mark COASTAL WINERY because it owns a vineyard located on a coast.  In opposer's view, granting applicant the exclusive right to use the term COASTAL or the phrase COASTAL WINERY in connection with such wine would deny not only opposer, but also competitors in the wine industry, the ability to accurately describe a characteristic of their own wine.

In support of its motion, opposer has submitted the declaration of William N. Marone, counsel for opposer, with the following exhibits: a definition of the word "coastal" from *Webster's Third New International Dictionary* (1993); approximately sixty news articles retrieved from the WESTLAW online database using the phrase "coastal wine," "coastal vineyard," or "coastal winery"; a copy of opposer's first set of requests for

admission, and applicant's responses thereto; and a copy of applicant's answers to opposer's first set of interrogatories.

In response to opposer's summary judgment motion, applicant argues that genuine issues of material fact remain regarding whether the term "coastal" is arbitrary when used in connection with wine. Applicant, while conceding that the ordinary definition of "coastal" is defined as "located on or near a coast," disputes opposer's contention that the term "coastal" has a particular meaning in the wine industry when used as part of the phrase "coastal wine" or "coastal winery." Applicant also questions the probative value of the news articles submitted by opposer, claiming that the majority of articles are from local newspapers as opposed to specialized wine publications. Applicant's counsel has attested to reviewing the sections on California wines and wineries in thirteen (13) wine publications,[3] none of

---

[3] Ed McCarthy and Mary Ewing-Mulligan, Wine for Dummies (2nd ed.); Philip Selden, Complete Idiot's Guide to Wine (2nd ed. 2000); Robert Genesis and Margaret Rand, Keep It Simple Series, Guide to Wine (2000); Hugh Johnson's Pocket Wine Book (2002); Jamal A. Rayyis, Wine Guide 2002 (2002); Ron Herbst and Sharon Tyler Herbst, Wine Lovers Companion (1995); Robert Genesis, The Ultimate Encyclopedia of Wine (1996); Jancis Robinson's Wine Course (1995); Cahrled L. Sullivan, A Companion to California Wine (1998); Doug Frost, On Wine, A Master Sommelier and Master of Wines Tells All (1994); Joanna Simon, Discovering Wine (1994); Danny May and Andy Sharp, The Everything Wine Book

which uses the term "coastal" to identify wines or wineries (except for two references to opposer's coastal wine). Finally, applicant contends that because the Bureau of Alcohol, Tobacco, and Firearms ("BATF") has not established "coastal" as an appellation of origin or viticultural area identifying a geographical origin of a wine, imagination is required for consumers to determine whether the mark COASTAL WINERY would identify wine as originating from a Pacific Coast winery in California.

In support of its position, applicant has submitted the declaration of Nicholas D. Yonano, counsel for applicant, with attached exhibits consisting of excerpts from the aforementioned wine publications as well as the BATF's 1985 notice of final rulemaking regarding the Central Coast viticultural area.

In reply, opposer maintains that it is irrelevant that the BATF has not created a single "coastal" viticultural area or appellation in California. Rather, it asserts, the common meaning of the term "coastal" controls--that consumers understand this term to identify wine produced at a coastal winery or from grapes grown in a coastal vineyard.

---

(1997); and Robert M. Parker, Parker's Wine Buyer's Guide (5th ed. 1999).

Opposer submitted with its reply brief a second declaration from Mr. Marone, with exhibits, attesting to his reviewing and printing the mission statement of the BATF as well as two articles retrieved from the LEXIS database.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law.  *See* Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

A mark is merely descriptive under Trademark Act § 2(e)(1), 15 U.S.C. § 1052(e)(1), if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the relevant goods and/or services. *See In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987)*; In re Bed & Breakfast Registry,* 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986)*; In re MetPath Inc.,* 223 USPQ 88 (TTAB 1984); and *In re Bright-Crest, Ltd.,* 204 USPQ 591 (TTAB 1979).

A term is suggestive if some imagination, thought or perception is required to determine the nature of the goods and/or services. A suggestive term differs from a descriptive term, which immediately tells something about the goods and/or services. *See Gyulay, supra.*

The determination of whether a mark is merely descriptive must be made in relation to the identified goods and/or services, and not in the abstract. *In re Omaha National Corp.* 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); and *In re Abcor Development Corp.* 588 F.2d 811, 200 USPQ 215 (CCPA 1978). It is not necessary that a term describe all of the purposes, functions, characteristics or features of the goods and/or services. It is enough if the term describes one significant attribute of the goods and/or services. *In re H.U.D.D.L.E,* 216 USPQ 358 (TTAB 1982); and *In re MBAssociates,* 180 USPQ 338 (TTAB 1973).

After a careful review of the record, we find that opposer has met its burden of establishing the absence of any genuine issues of material fact, and that applicant's mark, COASTAL WINERY, if used on varietal wines, would immediately describe, without need for thought or imagination, a significant feature of applicant's goods, namely the place or establishment where applicant

7

produces its wine.  The dictionary listing establishes that the term "coastal" is defined as "of or relating to a coast: located on or near a coast: bordering on a coast."  It is undisputed that applicant's vineyard is located on a coast, that the wine it intends to produce will come from an area near a coast, and that it selected the mark COASTAL WINERY because it owns a vineyard located on a coast.[4]

The evidence of record further demonstrates that the commonly recognized and understood meaning of "coastal," when used in connection with wine, identifies wine produced from grapes, vineyards, or wineries located on the coast of California.  Moreover, other wine-makers use the phrase "coastal winery" to designate that their wine is produced at a winery in this particular area. Representative excerpted stories retrieved from the WESTLAW database include the following (emphasis added):

> However, the grapes from modern vintage clarets--
> Cabernet Sauvignon, Merlot and Cabernet franc--as
> with all the Diamond Series varietals, are now
> sourced from California **coastal wine** regions.
> *Niebaum-Coppola: The Master's Hand,* Wines & Vines,
> Sept. 1, 2001.

> California's **'Coastal' wines** have been omitted
> because the top producers--Robert Mondavi, Beaulieu
> Vineyards, Callaway and Beringer--have an

---

[4] Applicant's response nos. 3-9 to opposer's first set of requests for admission; applicant's answer to interrogatory no. 1 of opposer's first set of interrogatories.

established reputation for valuing quality and need
no introduction to the average consumer.
Whitley, *Good Value Depends on More Than Price,* The
San Diego Union-Tribune, July 25, 2001.

California Chardonnay, on the other hand, is by and
large a heavy, butterscotch-and-vanilla beverage
produced from Chardonnay grapes grown primarily in
the **coastal wine** regions of California.
Whitley, *There's Hope for Chardonnay*, The San Diego
Union-Tribune, July 11, 2001.

The trend toward upscale wines, costing more than $7
a bottle, can be read as the trend toward **coastal
wine** and away from Central Valley wines.
Moran, *Wine Notes Column,* The Modesto Bee, March 23,
2001.

Most of the better-valued wines coming out of
California these days are from the **coastal areas**,...
Pointing out several California **coastal wines**,
Bologna said, 'we'll be pouring one of these popular
**coastal wines**, Callaway Vineyard & Winery's 1997
Chardonnay...'
*Arthritis Fund-Raiser to Feature California Wines,*
The Baton Rouge Advocate, Aug. 31, 2000.

California vintners have better luck working with
grapes grown in cool **coastal** vineyards, though even
the sun's intensity still can cause problems there.
The Washington Times, Oct. 17, 2001.

But Central California-from the Santa Ynez Valley up
into the **coastal** vineyards of San Luis Obispo and
Monterey counties-has its way with the great as
well. Charles E. Olken, *The Central Coast's New
Noirs,* Los Angeles Times, Feb. 7, 2001.

Its new line of '**coastal**' **wines**, released last month
should win new friends for the brand.
*Wine Rack Worth Sampling*, The New Orleans Times-
Picayune, March 16, 2000.

Mr. Sims says that **coastal** Chardonnay brands (Robert
Mondavi Coastal, Beaulieu Vineyard Coastal) will be
hardest hit by the lower '99 crush, the result of a
cool summer...

9

>   Boyd, *Mixed News from Harvest*, The Dallas Morning News, March 8, 2000.

>   A huge majority, 71% believe that California **coastal wines** are the highest overall quality of wine, followed by Bordeaux at 15%.
>   *Wine Sales Booming,* Wines & Vines, Sept. 1, 1998.

>   The corporate growers also bring something else to the **coastal wineries:** credibility.
>   David S. Jackson, *The Coastal Defense: A Global Wine War Is Looming, and California Essentially Has Become Strategic Territory,* Time Magazine, Sept. 17, 2001.

>   For these private-label clients, O'Neill said GSV with its 15 winemakers and five Central Valley and **coastal wineries** is a 'one-stop shop.'
>   Peter Sinton, *Growing Grapes for the Other Companies' Products,* The San Francisco Chronicle, July 31, 2001.

>   The **coastal wineries** are producing the soft pinot noirs and Rieslings while inland areas like the Redwood Valley are growing grapes for a full-body merlots and zinfandels.
>   The Press Democrat, Jan. 19, 2000.

>   **Coastal** grapes are generally considered better than inland grapes,...
>   Moran, *Wine Notes Column*, The Modesto Bee, Dec. 22, 2000.

As the evidence shows, the word "coastal" or the phrase "coastal winery" is frequently used to denote the place or establishment where wine is manufactured.  In light of the widespread use of the terms "coastal" and "coastal winery," the absence of the term "coastal" in the reference publications reviewed by applicant's

counsel is not sufficient to raise a genuine issue of material fact.

Applicant's claim that the majority of news articles submitted by opposer originate from local newspapers is simply not true. A review of the submissions reveals that almost one-half of the almost sixty articles are from regional or national newspapers and magazines such as the *Los Angeles Times, Chicago Daily Herald, The Wall Street Journal, The San Francisco Chronicle, The Washington Times, Time, Forbes, Esquire,* and *Wines & Vines.* Because applicant has otherwise failed to directly address or rebut any of this evidence, applicant has not raised a genuine issue of material fact in this regard.

Finally, applicant's argument regarding the BATF's failure to designate "coastal" as an appellation or viticultural area reflects a misunderstanding of the legal standard for mere descriptiveness. The fact that the term "coastal" is not an appellation or a viticultural area might suffice to raise an issue of material fact if the issue before us was whether applicant's proposed mark is generic. However, it does not raise a genuine issue of material fact with respect to the issue of mere descriptiveness inasmuch as opposer

need only prove that applicant's proposed mark describes a feature, quality, purpose, characteristic, etc. of the goods.

In view of the foregoing, opposer's motion for summary judgment is granted.

As noted earlier, applicant, in its answer, pleaded the affirmative defenses of laches, estoppel, and acquiescence. However, neither party raised these issues on summary judgment. In any event, we find that, as a matter of law, applicant's affirmative defenses are unavailable in this case. The equitable defenses of laches, estoppel, and acquiescence cannot be asserted against a claim of descriptiveness. *See TBC Corporation v. Grand Prix Ltd.,* 12 USPQ2d 1311 (TTAB 1989); *Bausch & Lomb, Inc. v. Leupold & Stevens Inc.,* 1 USPQ2d 1497 (TTAB 1986); *Care Corp. v. Nursecare International, Inc.,* 216 USPQ 993 (TTAB 1982); *Yankee, Inc. v. Geiger,* 216 USPQ 996 (TTAB 1982); *Southwire Co. v. Kaiser Aluminum & Chemical Corp.,* 196 USPQ 566 (TTAB 1977); *Kaiser Aluminum & Chemical Corp. v. American Meter Co.,* 153 USPQ 419 (TTAB 1967). Furthermore, inasmuch as opposer promptly opposed registration of applicant's mark, applicant has no basis for the defenses of laches, estoppel, or acquiescence. *National Cable Television Ass'n v.*

12

*American Cinema Editors, Inc.,* 937 F.2d 1572, 19 USPQ2d 1424 (Fed. Cir. 1991) (the defense of laches can only start running from the date an application for registration is published for opposition); and *Lincoln Logs, Ltd. v. Lincoln Pre-Cut Log Homes, Inc.,* 971 F.2d 732, 23 USPQ2d 1701 (Fed. Cir. 1992).

In view of the above, judgment is hereby entered against applicant, the opposition is sustained, and registration to applicant is refused.