THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: October 26, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Boston Athletic Association*

*v.*

*Velocity, LLC*

_____

Opposition No. 91202562

_____

Michael Bevilacqua and Barbara A. Barakat of Wilmer Cutler Pickering Hale and
 Dorr LLP for Boston Athletic Association

Andrea J. Mealey of Hinckley Allen & Snyder LLP for Velocity, LLC.

_____

Before Bergsman, Wolfson and Lykos, Administrative Trademark Judges.

Opinion by Wolfson, Administrative Trademark Judge:

Velocity, LLC ("Applicant") has filed an application to register the mark

MARATHON MONDAY, in standard character format, for "clothing, namely, tops,

bottoms, headwear, sweatshirts, sweat pants, jackets, pullovers, caps, hats, socks"

in International Class 25.[1] The Boston Athletic Association ("Opposer" or "BAA")

has opposed the registration of Applicant's mark, alleging in its second amended

notice of opposition that Applicant's mark should not be registered pursuant to

---

[1] Application Serial No. 85224698, filed January 24, 2011, based on Section 1(b) of the
Trademark Act; amended to assert Section 1(a) on April 11, 2011 and alleging April 7, 2011
as the date of first use anywhere and April 11, 2011 as the date of first use in commerce.

Section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a), because it creates a false suggestion of a connection with Opposer. Specifically, Opposer has alleged that since "long prior to the January 24, 2011 filing date of Applicant's application, the mark 'Marathon Monday' has identified the Opposer and the provision of Opposer's Goods and services";[2] that Applicant's mark, MARATHON MONDAY, "is the same as Opposer's previously used name or identity, [and] points uniquely and unmistakably to Opposer;"[3] that Opposer is not connected with the goods sold or intended for sale by Applicant under the mark MARATHON MONDAY;[4] and that the term MARATHON MONDAY, insofar as it identifies Opposer, is sufficiently famous that a connection between Applicant and Opposer would be presumed based on Applicant's use of MARATHON MONDAY on its goods.[5] In its answer, Applicant admits that it seeks to register the mark MARATHON MONDAY for clothing and that Opposer is not connected with Applicant's goods sold under the mark, but otherwise denies that its mark falsely suggests a connection with Opposer's name or identity.

The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), Applicant's application file. In addition, Opposer introduced the testimony deposition of John Fleming, Opposer's Director of

---

[2] Paragraph 19 of Opposer's amended notice of opposition, 14 TTABVUE.

[3] *Id.,* Paragraphs 20 and 21.

[4] *Id.,* Paragraph 22.

[5] *Id.,* Paragraph 23.

Marketing and Communications, with attached exhibits, and the following evidence under notices of reliance:

1. Copies of Opposer's pleaded registrations for the mark BOSTON MARATHON printed from the electronic database of the USPTO, showing the status of the registrations and Opposer's title thereto.[6]

2. Copies of internet printouts, news articles and press releases purporting to show that MARATHON MONDAY and BOSTON MARATHON are used interchangeably to identify Opposer.

3. Excerpts of Applicant's responses to Opposer's interrogatories regarding Applicant's sales and marketing of its MARATHON MONDAY t-shirts and caps.

4. Excerpts of Applicant's responses to Opposer's document request Nos. 2, 3 and 26 (discussed below).

5. Excerpts of Applicant's responses to Opposer's requests for admissions.

Applicant introduced the following evidence under notices of reliance:

1. Copies of internet excerpts from third-party websites and printouts from a "WHOIS" domain name search applicant conducted purporting to show third-party uses of the term MARATHON MONDAY.

2. Copies of Opposer's responses to Applicant's document production requests nos. 4, 6 and 9. Opposer responded that no responsive documents exist.

3. Copies of Opposer's responses to Applicant's first set of interrogatories.

4. A copy of the Fleming testimony deposition (including exhibits) previously introduced by Opposer.[7]

---

[6] Reg. Nos. 1346832 and 1832708.

[7] As all testimony depositions must be filed with the Board, Trademark Rule 2.123(h), the Fleming testimony deposition was of record without need for Applicant to have filed it

Generally, a party that has obtained documents through a response to a request for production of documents may not make the documents of record by notice of reliance alone. Trademark Rule 2.120(j)(3)(ii). Accordingly, we have not considered Applicant's responses to Opposer's document production requests nos. 2 and 3, which referred Opposer to "documents produced herewith." We also do not consider the documents submitted under Opposer's notice of reliance in response to these two requests. On the other hand, we have considered Applicant's response to request no. 26 (seeking "all contracts and written documents between Applicant and third parties which relate to Applicant's Mark") because Applicant stated that it had no responsive documents. When no documents exist which are responsive to a document request, a party's response that no documents exist may be made of record. *See City Nat'l Bank v. OPGI Mgmt. GP Inc./Gestion OPGI Inc.,* 106 USPQ2d 1668, 1674 n.10 (TTAB 2013) (responses to document production requests are admissible solely for purposes of showing that a party has stated that there are no responsive documents); *Pioneer Kabushiki Kaisha v. Hitachi High Technologies Am., Inc.,* 74 USPQ2d 1672, 1679 (TTAB 2009) (a party may rely on the response that responsive documents do not exist). For this reason, we have also considered Opposer's responses to Applicant's document production requests nos. 4, 6 and 9.

under a Notice of Reliance. *See Anheuser-Busch, Inc. v. Major Mud & Chemical Co.,* 221 USPQ 1191, 1192 n.7 (TTAB 1984) ("testimony depositions and exhibits introduced in connection with said depositions must be filed with the Board and said depositions are automatically of record for both parties for all relevant purposes without any need for a notice of reliance.") Moreover, once a deposition is admitted into evidence, "it may be relied on by an adverse party and considered by the Board for any relevant purpose." *American Lebanese Syrian Associated Charities Inc. v. Child Health Research Institute*, 101USPQ2d 1022, 1025 (TTAB 2011).

<u>Standing</u>

To establish its standing, Opposer must prove that it has a "real interest" in the proceeding and a "reasonable basis" for its belief of damage. *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1026 (Fed. Cir. 1999). In the context of a Section 2(a) claim, standing "does not rise or fall on the basis of a plaintiff's proprietary rights in a term; rather, a Section 2(a) plaintiff has standing by virtue of who the plaintiff is, that is, the plaintiff's personality or 'persona.'" *Estate of Biro v. Bic Corp.*, 18 USPQ2d 1382, 1385 (TTAB 1991).

Opposer owns two registrations for the mark BOSTON MARATHON, one for "entertainment service[s], namely staging marathon races"[8] and the other for a variety of goods, including "t-shirts" and "hats," as well as for staging marathon races and charitable fundraising walks.[9] Opposer does not own a registration for MARATHON MONDAY, but the record shows, as discussed *infra*, that Opposer has used both BOSTON MARATHON and MARATHON MONDAY in association with marathon races. This is sufficient to show that Opposer has a reasonable belief that it will be damaged by registration of Applicant's mark. As such, Opposer has

---

[8] Reg. No. 1346832 was registered on July 2, 1985; renewed.

[9] Reg. No. 1832708 was registered on April 26, 1994 for "rings, pendants, and pins" in International Class 14; "souvenir program books, maps, lithographic prints, posters and pens" in International Class 16; "fanny packs and tote bags" in International Class 18; "mugs" in International Class 21; "shirts, sweatshirts, T-shirts, jackets, gloves, shorts, hats, and pants" in International Class 25; "embroidered emblems" in International Class 26; and "entertainment services; namely, staging marathon races and charitable fundraising walks" in International Class 41; renewed.

established its standing.  Moreover, Applicant does not contest Opposer's standing in this case.

False Suggestion of a Connection

Section 2(a) prohibits registration of "matter which may … falsely suggest a connection with persons, living or dead, institutions, beliefs or national symbols." 15 U.S.C. § 1052(a). To establish its claim of false suggestion of a connection under Section 2(a), Opposer must prove (1) that MARATHON MONDAY is, or is a close approximation of, Opposer's name or identity, as previously used by it or identified with it;[10] (2) that Applicant's mark, MARATHON MONDAY, would be recognized as such by purchasers of Applicant's goods, in that it points uniquely and unmistakably to Opposer; (3) that Opposer is not connected with the goods that are sold or will be sold by Applicant under its MARATHON MONDAY mark; and (4) that Opposer's name or identity is of sufficient fame or reputation that when used by Applicant as a mark for its goods, a connection with Opposer would be presumed.

---

[10] In most cases, a party asserting a violation of Section 2(a) will have previously used the name or likeness that is at issue in the case. However, an opposer may prevail on the false suggestion of a connection ground "even if the name claimed to be appropriated was never commercially exploited by the opposer as a trademark or in a manner analogous to trademark use." *Bd. of Trs. of Univ. of Ala. v. Pitts,* 107 USPQ2d 2001, 2025 (TTAB 2013), *motion to vacate den'd* 115 USPQ2d 1099 (TTAB 2015); *see also In re Nieves & Nieves LLC,* 113 USPQ2d 1639, 1644 (TTAB 2015) (ROYAL KATE creates a commercial impression that references Kate Middleton even though she has never used the identifier). *See also* TMEP § 1203.03(c)(i) (June 2015) ("A refusal on this basis requires, by implication, that the person or institution with which a connection is falsely suggested must be the prior user."); J. Thomas McCarthy, 3 *McCarthy on Trademarks and Unfair Competition* §19:76 (4th ed. 2015) ("The phrase 'falsely suggest a connection with' in § 2(a) necessarily requires by implication that the person or institution with whom a connection is suggested must be the prior user.").

*See Univ. of Notre Dame du Lac v. J.C. Food Imports Co.,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *Nieves,* 113 USPQ2d at 1643; *Pitts,* 107 USPQ2d at 2025; *Buffett v. Chi-Chi's, Inc.,* 226 USPQ 428 (TTAB 1985).

Because we find that MARATHON MONDAY is not a close approximation of Opposer's previously used name or identity, and because it does not point uniquely and unmistakably to Opposer, Opposer has failed to establish its claim of false suggestion of a connection under Section 2(a). We discuss these factors in turn.

### *Whether MARATHON MONDAY is, or is a close approximation of, Opposer's previously used name or identity?*

In addressing the first prong of the test set out above, that is, whether MARATHON MONDAY is the name or identity of Opposer or a close approximation of such name or identity, Opposer takes a two-step approach. First, Opposer relies on a claim that the name of the race, BOSTON MARATHON, also identifies the commercial entity known as the BAA:

> Because Opposer has organized and operated the Boston Marathon for this length of time, and because of the fame of this race, the public identifies the Boston marathon with the Opposer, the Boston Athletic Association. The name Boston Marathon is the equivalent, and the public face, of the Opposer. … Opposer submits that the Boston Athletic Association and the Boston Marathon are the same commercial enterprise, and, in the minds of the public are not separable.[11]

Opposer next argues that the phrases MARATHON MONDAY and BOSTON MARATHON are interchangeable:

---

[11] Opposer's reply brief, 28 TTABVUE 6.

> Nonetheless, Opposer's previously used identity is its BOSTON MARATHON mark, and MARATHON MONDAY refers specifically to, and is synonymous with, the Boston Marathon.[12]

Because of the two-step analysis Opposer has employed, the Section 2(a) claim presented in this case is somewhat different from what the Board sees in most cases involving such a claim. In this case, Opposer is attempting to show that BOSTON MARATHON is Opposer's persona and that Applicant's mark MARATHON MONDAY is a close approximation of BOSTON MARATHON. Further, to the extent Opposer may also be attempting to show that MARATHON MONDAY is itself perceived as Opposer's name or identity, we have considered whether the record shows that MARATHON MONDAY qualifies as Opposer's name or identity under Section 2(a).

The fact that neither BOSTON MARATHON nor MARATHON MONDAY is Opposer's official name is not a dispositive factor. A nickname or an informal reference, even one created by the public, can qualify as an entity's "identity," thereby giving rise to a protectable interest. "[T]he protection afforded by the relevant portion of Section 2(a) is not strictly limited to the unauthorized use of a 'name or likeness.'" *Buffett v. Chi-Chi's,* 226 USPQ at 429 n. 4 (MARGARITAVILLE falsely suggested connection with the public persona of singer-songwriter Jimmy Buffett). *See also Nieves,* 113 USPQ2d 1639 (finding ROYAL KATE falsely suggested a connection with Catherine, Duchess of Cambridge, also known as Kate Middleton); *In re Kent Pedersen,* 109 USPQ2d 1185 (TTAB 2013) (application for

---

[12] *Id.*

LAKOTA falsely suggested a connection with a historic people who speak the Lakota language and share a common culture); *Hornby v. TJX Cos.*, 87 USPQ2d 1411 (TTAB 2008) (TWIGGY falsely suggested connection with professional model known by that nickname); *In re Sauer*, 27 USPQ2d 1073 (TTAB 1993) (BO BALL falsely suggested a connection with professional football and baseball player Bo Jackson, widely known by his nickname "Bo"); *Bd. of Trs. of Univ. of Ala. v. BAMA-Werke Curt Baumann*, 231 USPQ 408 (TTAB 1986) (BAMA well-known as University's nickname).

There is no dispute that the term "Boston Marathon" is well-known among the general public as identifying a competitive marathon that takes place yearly in Boston, Massachusetts. The race has been held on the third Monday in April every year for the past 117 years.[13] An excerpt from Wikipedia describes it as "the world's oldest annual marathon, … rank[ing] as one of the world's best-known road racing events. It is one of five World Marathon Majors."[14] An estimated 500,000 people come to watch the marathon annually.[15] The marathon is broadcast live to more than 125 countries and "close[] to a hundred to 200 million [people] internationally"

---

[13] Fleming Dep., p. 12. 19 TTABVUE 14.

[14] At http://en.wikipedia.org; Opposer's July 25, 2013 Not. of Rel. Exhibit 14. 16 TTABVUE 75.

[15] *Id*.

watch the race each year.[16] It has been described as "America's oldest and most prestigious marathon."[17]

As can be seen, the Boston Marathon is a famous runners' race. What may not be publically well-known is the fact that this famous race is arranged and conducted by the BAA. Only a single article made of record clearly associated the BAA with the BOSTON MARATHON,[18] in addition to a Wikipedia entry printed on July 23, 2012 that describes Opposer as the "non-profit, organized sports association that organizes the Boston Marathon and other events."[19] However, even in the absence of survey or other direct evidence showing widespread recognition among participants in the Boston Marathon or viewers of the race that the Boston Marathon is operated by the BAA, given the magnitude and longevity of the event, we find that the Boston Marathon is so well known that it is inevitable that over the course of more than a century, it has become associated with its organizer, the BAA. *See In re Urbano*, 51 USPQ2d 1776, 1779 (TTAB 1999) (Although the Olympic Games, *per se*, are not an "institution," SYDNEY 2000 falsely suggested a connection with the Olympic Games taking place that year in Sydney, Australia). "[I]t is only common sense that an event of such magnitude, which occurs on a

---

[16] Fleming Dep., p. 13. 19 TTABVUE 15.

[17] At http://bostinno.streetwise.com; Fleming Dep. Exhibit 2. 19 TTABVUE 152.

[18] *See, e.g.,* the article in The Melrose Mirror, dated May 7, 2004, and entitled "Joe Smith winner Boston Athletic Association 1941," which profiles the "Medford Milkman Joe Smith who captured the Boston Marathon (BAA) title as a member of the North Medford Club" on "the day of the BAA Marathon-1942." At http://melrosemirror.media.mit.edu; Fleming Dep. Exhibit 22. 19 TTABVUE 232.

[19] At http://en.wikipedia.org; Opposer's July 25, 2013 Not. of Rel. Exhibit 14. 16 TTABVUE 75.

regular and ongoing basis, requires a substantial organizational structure to support and organize it." *Id.* Thus, even if the public does not know that the actual name of the organization in charge of the race is the Boston Athletic Association, they will understand that an alternative name represents the association. Therefore, we find that "Boston Marathon" is perceived as a name or identity of the Boston Athletic Association.

However, even though we find that "Boston Marathon" is an identity of Opposer, for Opposer to prevail on its claim that Applicant's mark, MARATHON MONDAY, falsely suggests a connection with its persona of "Boston Marathon," Opposer must also show that MARATHON MONDAY is a close approximation of this persona. "[T]he similarity required for a 'close approximation' is akin to that required for a likelihood of confusion under § 2(d) and is more than merely 'intended to refer' or 'intended to evoke.'" *Bd. of Trs. of Univ. of Ala. v. Pitts,* 107 USPQ2d at 2027. In other words, Applicant's mark MARATHON MONDAY must do more than simply bring Opposer's BOSTON MARATHON persona to mind. *See also Boston Red Sox Baseball Club LP v. Sherman,* 88 USPQ2d 1581 (TTAB 2008) (test for false suggestion of a connection more stringent than in disparagement, where reference to persona suffices). In this respect, the mere fact that the marks share the common word "marathon" does not establish that MARATHON MONDAY is a close approximation of "Boston Marathon." On the contrary, "Boston Marathon" is inextricably connected to the city of Boston through the geographic reference in the name. MARATHON MONDAY creates no such connection.

11

As for whether MARATHON MONDAY *per se* qualifies as the BAA's identity, while we accept that the well-known designation BOSTON MARATHON has, over the course of more than a century, become associated with its organizer, the BAA, there is little evidence that MARATHON MONDAY has become known as Opposer's persona, or as a synonym for Boston Marathon. To be clear, there is evidence of record regarding the BAA's use of MARATHON MONDAY as identifying a race known as the Boston Marathon, but not sufficient evidence of the public's recognition of MARATHON MONDAY as identifying not merely the race, but the entity that organizes the race. In other words, the fact that the Boston Marathon is annually held on the third Monday in April may be generally known by the consuming public, but it has not been shown that MARATHON MONDAY is a recognized name or identity of the commercial entity responsible for the Boston Marathon. Opposer's Section 2(a) claim requires proof not just that the Boston Marathon is always run on "Marathon Monday," but that consumers view MARATHON MONDAY so closely with Opposer that they recognize it as Opposer's name (or nickname), identity or persona. The record does not show this.

Because the record does not support a claim that MARATHON MONDAY is either a previously used name or identity of the BAA or a close approximation of Opposer's name or identity, Opposer's claim under Section 2(a) fails under the first prong of the test.

### *Whether MARATHON MONDAY points uniquely and unmistakably to Opposer?*

Opposer's claim also fails under the second prong of the false suggestion test, in that Opposer has failed to show that the mark MARATHON MONDAY points uniquely to the Boston Athletic Association. "Under concepts of the protection of one's 'identity,' … the initial and critical requirement is that the name (or an equivalent thereof) claimed to be appropriated by another must be unmistakably associated with a particular personality or 'persona.'" *Univ. of Notre Dame,* 217 USPQ at 509. *See also In re Kayser-Roth Corp.,* 29 USPQ2d 1379 (TTAB 1993) (registration of mark "Olympic Champion" for clothing did not point uniquely and unmistakably to U.S. Olympic Committee); *Ritz Hotel Ltd. v. Ritz Closet Seat Corp.*, 17 USPQ2d 1466, 1471 (TTAB 1990) (RIT-Z for toilet seats did not point uniquely to Opposer); *Calvin Klein Indus. Inc. v. Calvins Pharm. Inc.,* 8 USPQ2d 1269, 1272 (TTAB 1988) (evidence failed to establish that "Calvins" or "Calvin" was associated solely with opposer); *NASA v. Bully Hill Vineyards, Inc.*, 3 USPQ2d 1671, 1676 (TTAB 1987) (the term SPACE SHUTTLE did not point uniquely and unmistakably to NASA). The protection afforded a name or its equivalent under Section 2(a) is acquired only when the name claimed to be appropriated points "uniquely and unmistakably" to the plaintiff's "persona," that is the personal or trade identity of the claimant. *Buffett v. Chi-Chi*, 226 USPQ at 429.

Applicant's evidence establishes that other entities use "Marathon Monday" to refer to marathons other than Opposer's and to running activities and training

related to other marathons. The most significant of these refers to the Monday after the ING New York City Marathon as "Marathon Monday."[20] For example:

1. Under the banner "*Marathon Monday Mania,*" the ING New York City Marathon website describes a lottery to be held on the Monday after the NYC race was run on a Sunday in 2012, for a chance to win an entry into the next year's ING New York City Marathon.[21]

2. An article posted on NYCRUNS.com in 2010 entitled "*Marathon Monday Mania*" describes how to get into the lottery for the 2011 race.[22]

3. The ING's website for 2013 displays a calendar of events, one of which is "Marathon Monday at the Marathon Pavilion."[23]

4. On the ING New York City Marathon Facebook page, readers are encouraged to "Come back to Central Park on Marathon Monday and celebrate your accomplishment!"[24]

5. There is similar media coverage to the above listings 1-4 for the 2012 "Marathon Monday at the Marathon Pavilion."[25]

6. An article dated October 21, 2008, and entitled *ING New York Marathon Sponsor Field Grows, Adds Contests*

[20] We note that Opposer's response to Applicant's interrogatory no. 7 identifies the New York marathon as one of the three "major marathons," in the same category with the Boston and the Chicago marathons.

[21] At http://www.ingnycmarathon.org; Applicant's Sept. 23, 2013 Not. of Rel., Exhibit 1. 21 TTABVUE 6.

[22] At http://myemail.constantcontact.com; Applicant's Sept. 23, 2013 Not. of Rel., Exhibit 5. 21 TTABVUE 20.

[23] At http://www.ingnycmartathon.org; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 3. 21 TTABVUE 12.

[24] At https://wwwfacebook.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 4. 21 TTABVUE 17.

[25] At http://abclocal.go.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 6. 21 TTABVUE

> advises, "A Marathon Monday event in Central Park will sell marathon memorabilia, including official race pins."[26]

Besides the direct references to the ING New York City Marathon, other entities use the term "Marathon Monday" to describe their activities in reference to that race. Under the link "tours and attractions" at the NewYork.com/Connected to Everything website, an article provides information about New York City tours under the headline *Marathon Monday: Tours for Sore Legs.*[27]  An article on the website "Run It Fast" entitled *What to say on Marathon Monday? Well, Anything!*" contains links to "Marathon Monday," "Marathon Sunday," and "New York City Marathon." The article also comments on a prior article written by someone else noting that he "refers to the day after a traditional Sunday marathon as 'Marathon Monday.'"[28] While not considered for the truth of any matters asserted therein, the on-line articles are competent to show that the public has been exposed to the term "Marathon Monday" and the meaning the public is likely to associate with the term. *Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.,* 107 USPQ2d 1750, 1758 (TTAB 2013); *In re Bed & Breakfast Registry*, 791 F.2d 157, 160, 229 USPQ 818, 819 (Fed. Cir. 1986) (competent sources to show the relevant purchasing public's understanding of a term may include trade journals, newspapers and other publications).

---

[26] At http://www.planestrainsandrunningshoes.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 8. 21 TTABVUE 35.

[27] At http://www.newyork.com/articles/tours; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 7. 21 TTABVUE 31.

[28] At http://runitfast.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 27. 21 TTABVUE 130.

Other third-parties use the term "Marathon Monday" in various ways to refer to the Monday after a marathon. On the DisneyParks website, dated June 1, 2010, the term Marathon Monday is used to refer to a celebration hosted by the Walt Disney Company the day after the 2011 Walt Disney World Marathon (held on a Sunday).[29] Several on-line blogs incorporate the term Marathon Monday to refer to a marathon race or training for such a race, simply as a reference to Monday as having significance with respect to marathons, rather than as a designator of source for the authors of the blogs.[30] For example, the article entitled "*Marathon Monday: Ryan Langson*" is a personal story about a participant in the Las Vegas Marathon.[31] The article headed "*Marathon Monday-Training in Session*" is a first-person posting about a runner's training and her plans to post her progress each Monday,[32] as is the article entitled "*Marathon Monday*" in which the author states "Marathon Monday is what I'm calling the next 27 entries I post on Monday as I train to run the ING Hartford Marathon on October 15."[33] Other usages do not appear to refer to

---

[29] At http://disneyparks.disney.go.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 11. 21 TTABVUE 48.

[30] These blogs generally appear to be the postings of individuals. Their probative value is therefore more limited insofar as we do not know the extent of the reach to the public. Nonetheless, it is undisputed that the blogs are publicly available.

[31] At http://www.8newsnow.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 10. 21 TTABVUE 44.

[32] At http://inmidstride.wordpress.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 16. 21 TTABVUE 72.

[33] At http://colleenconnolly.wordpress.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 21. 21 TTABVUE 93. Other individuals have also incorporated "Marathon Monday" into the title of their blog posting to describe their marathon training. For example, Exhibit 23 is also a first-person posting by "Christie O." about her training for the Miami ING Marathon, entitled "*Marathon Monday: Training Commences*." At

a running race at all: at the Blue Mountain State website, the term is used to describe a "24-hour non-stop party" shown in a TV show,[34] and the "WTSO Marathon Monday," described in an on-line forum relating to wine as a 24-hour wine-purchasing event held by "Wines 'Til Sold Out" at www.winestilsoldout.com on Monday, November 2, 2009.[35]

Given the lack of sufficient evidence showing that MARATHON MONDAY is perceived by the relevant public as a close approximation of the name or identity of Opposer, and given the frequent and various third-party uses of the term "Marathon Monday" detailed above (in particular, those that refer to the ING New York City Marathon), which show that the term does not point uniquely and unmistakably to Opposer, there is no need for us to analyze the third and fourth prongs of the test. We find that Applicant's use of the term MARATHON MONDAY on clothing does not falsely suggest a connection with the Boston Athletic Association.

**Decision:** The opposition under Section 2(a) is dismissed and registration to Applicant will issue in due course.

---

http://averagemomswearcapes.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 23. 21 TTABVUE 101.

[34] At http://www.tv.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 19. 21 TTABVUE 85.

[35] At https://www.cellartracker.com; Applicant's Sep. 23, 2013 Not. of Rel., Exhibit 26. 21 TTABVUE 116.